IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Janice Cox, ) | |
| ) | Civil Action No. 6:13-747-JMC-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Assisted Living Concepts, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

      This matter is before the court on the defendant's partial motion to dismiss for failure to state a claim (doc. 6) and motion to dismiss action and to compel arbitration (doc. 10). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) DSC, all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

      The plaintiff is an African-American woman over the age of 60 who was employed as a "medical technician" by the defendant at Manning House, a senior citizen residential living facility in Greenville, South Carolina, from April 5, 2004, until April 30, 2012 (amended comp. ¶¶ 5, 7). At the time she became employed with the defendant, she was provided with a document entitled "Employee Handbook." The plaintiff alleges that during the time leading up to her discharge, she advised her supervisors about concerns she had with resident safety and reported her concerns on the facility's logs used for reporting purposes to the Department of Health and Environmental Control (*id.* ¶¶ 8-9). The plaintiff also alleges that in response to voicing her concerns, her supervisor assigned her more housekeeping duties (*id.* ¶ 11), while other younger, white "medical technicians" were not required to complete the same housekeeping duties. Additionally, the plaintiff alleges that younger, white co-workers were not disciplined when they failed to perform some or all of their duties (*id.* ¶ 14). The plaintiff further alleges that after her discharge, the defendant

hired several employees to perform the same job duties she had been required to perform alone (*id.* ¶ 15). The plaintiff alleges that she has met all administrative prerequisites to filing her lawsuit including filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and receiving the EEOC's Determination and Right to Sue Notice dated October 31, 2012 (*id.* ¶ 4).

On January 31, 2013, the plaintiff commenced this action by filing a complaint in the Greenville County Court of Common Pleas. Thereafter, on March 21, 2013, the defendant timely removed the action to this court. In her original complaint, the plaintiff brought four causes of action: (1) race and age discrimination in violation of the South Carolina Human Affairs Act; (2) wrongful termination in violation of public policy; (3) race and age discrimination in violation of Title VII of the Civil Rights Act of 1964; and (4) race and age discrimination in violation of 42 U.S.C. § 1981 (doc. 1-1).

On March 28, 2013, the defendant filed a partial motion to dismiss for failure to state a claim, arguing that the plaintiff is not entitled to relief on her age discrimination claims because neither Title VII nor Section 1981 address discrimination on the basis of age (doc. 6-1). Rather than file a response to the defendant's motion, on April 15, 2013, the plaintiff filed an amended complaint. In the amended complaint, the plaintiff brought six causes of action: (1) race and age discrimination in violation of the South Carolina Human Affairs Act; (2) wrongful termination in violation of public policy; (3) race and age discrimination in violation of Title VII; (4) race and age discrimination in violation of Section 1981; (5) race and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); and (6) breach of employment contract (doc. 7).

On April 26, 2013, the defendant filed a motion to dismiss action and to compel arbitration (doc. 10), arguing that the plaintiff agreed to arbitrate any employment-related claims that she might have against the defendant. In the motion, the defendant also argued that the plaintiff's amended complaint did not cure the defects identified in the partial motion to dismiss for failure to state a claim (doc. 10 at p. 3 n.1). The plaintiff filed

her response in opposition on July 29, 2013, and the defendant filed a reply on August 8, 2013.

## **APPLICABLE LAW AND ANALYSIS**

*Motion to Dismiss Action and to Compel Arbitration*

In its motion to dismiss action and to compel arbitration, the defendant argues that the plaintiff executed the 2012 Employee Handbook Acknowledgment Receipt, confirming her receipt of the newest version of the Employee Handbook and agreement to submit all disputes regarding her employment to binding arbitration pursuant to the terms of the Arbitration Policy included within the Handbook (*see* doc. 10-1). The Arbitration Policy provides, among other things, that "[a]ny controversy, dispute or claim between any employee and the Company, or its officers, agents or other employees, shall be settled by binding arbitration, at the request of either party," and that "[t]he claims which are to be arbitrated under this policy include, but are not limited to, . . . claims for breach of contract (express or implied), claims for violation of public policy, wrongful termination, . . . claims for unlawful discrimination and/or harassment (including, but not limited to, race . . . age . . .) . . . " (doc. 10-2). The Arbitration Policy also provides: "The arbitrability of any controversy, dispute or claim under this policy shall be determined by application of the substantive provisions of the Federal Arbitration Act (9 U.S.C. Sections 1 and 2) and by application of the procedural provisions of any applicable state arbitration laws" (*id.*).

In *Adkins v. Labor Ready, Inc.,* 303 F.3d 496 (4th Cir. 2002), the Fourth Circuit Court of Appeals noted the Federal Arbitration Act's ("FAA") liberal federal policy favoring arbitration agreements. The court stated:

> The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. This stay-of-litigation provision is mandatory. A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview.

3

*Id*. at 500 (quoting *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir.2001)). The court further stated:

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

*Id.* at 500-501 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir.1991)).

In response, the plaintiff argues: (1) the FAA is not applicable in the instant case pursuant to *Timms v. Greene*, 427 S.E.2d 642 (S.C. 1993) because her job did not involve interstate commerce; (2) the Arbitration Policy does not comply with the South Carolina Uniform Arbitration Act ("SCUAA"), and thus it is not enforceable; (3) the Arbitration Policy is invalid as the Handbook states several times that it does not constitute a contract and the Arbitration Policy lacks consideration; and (4) the Arbitration Policy is unconscionable.

The plaintiff first argues that the FAA does not apply because her job did not involve interstate commerce. "The term 'involving commerce' in Section 2 of the FAA is interpreted to 'signal the broadest permissible exercise of Congress' Commerce Clause power' to encompass activities within the flow of interstate commerce." *McElveen v. Mike Reichenback Ford Lincoln*, C.A. No. 4:12-874-RBH-KDW, 2012 WL 3964973, at *3 (D.S.C. Aug. 22, 2012), *Report and Recommendation adopted by* 2012 WL 3965139 (D.S.C. Sept. 11, 2012). In *Timms*, the case cited by the plaintiff, the Supreme Court of South Carolina found that the contract at issue for patient-residential services was devoid of any basis for holding that commerce was involved in the transaction between the parties. 427 S.E.2d at 644. *Timms* was a personal injury case between a patient and a nursing home. After the filing of the parties' briefs in the instant action, on August 14, 2013, the Supreme Court of

4

South Carolina overruled *Timms* "to the extent it determined the FAA did not apply because the contract on its face failed to demonstrate that the parties contemplated an interstate transaction." *Cape Romain Contractors, Inc. v. Wando E., LLC*, 747 S.E.2d 461, 465 n.5 (S.C. 2013).

Unlike the *Timms* case, the plaintiff here was employed by the defendant. "Courts construing the language of section 2 [of the FAA] in the context of an employment relationship have generally focused on the nature of the defendant employer's business, not the employee's individual duties." *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *6 (M.D. Fla. March 10, 2008) (citations omitted). The defendant here "is a Nevada corporation with its principal place of business in Wisconsin and operates an assisted living facility in Greenville County, South Carolina" (doc. 5 at p. 1). Furthermore, the defendant argues that courts in this district have consistently held that the FAA is applicable to employment disputes (doc. 30 at p. 2) (citations omitted). *See Murray v. United Food and Commercial Workers Intern. Union*, 289 F.3d 297, 301 (4th Cir. 2002) ("It is settled that the provisions of the FAA, and its policy favoring the resolution of disputes through arbitration, apply to employment agreements to arbitrate discrimination claims brought pursuant to federal statutes, including Title VII of the Civil Rights Act."). Notably, in a recent case in this circuit, the district court found as follows:

> [The plaintiff's] amended complaint contains claims under three federal statutes, including Title VII and the ADEA, which only apply to an employer engaged in commerce. *See* 42 U.S.C. § 2000e(b), (g), (h) (Title VII); 29 U.S.C. § 630(b), (g), (h) (ADEA). . . . By asserting those claims, then, [the plaintiff] in effect concedes the interstate nexus for her employment.

*Rum v. DARCARS of New Carrollton, Inc.*, C.A. No. DKC 12-0366, 2012 WL 2847628, at *3 (D. Md. July 10, 2012). Based upon the foregoing, the undersigned finds that the FAA applies to the agreement between the plaintiff and the defendant.

The plaintiff next argues that no valid and enforceable agreement to arbitrate exists due to the defendant's failure to adhere to the mandatory notice provisions of the SCUAA. *See* S.C. Code Ann. § 15-40-10. However, as set forth above, the Arbitration Policy expressly states that it is governed by the FAA, and the undersigned has found that the FAA is applicable to the Arbitration Policy. Furthermore, even where an arbitration agreement specifically states that the SCUAA is applicable, if the arbitration agreement is covered by the FAA and cannot be enforced under state law because of failure to comply with the notification requirements of the SCUAA, the FAA preempts the state law. *See Soil Remediation Co. v. Nu-Way Environmental, Inc.*, 476 S.E.2d 149, 151-52 (S.C. 1996) (enforcing, under FAA, arbitration agreement that failed to satisfy the notice requirements of the SCUAA) (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996) (holding that "[c]ourts may not ... invalidate arbitration agreements under state laws applicable only to arbitration provisions")). Accordingly, this argument is without merit.

The plaintiff next argues that the Arbitration Policy is invalid as it is not a contract. "[E]ven in cases where the FAA otherwise applies, general contract principles of state law apply in a court's evaluation of the enforceability of an arbitration clause." *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 667 (S.C. 2007) (citing *Munoz v. Green Tree Fin. Corp.*, 542 S.E.2d 360, 364 (S.C. 2001) ("General contract principles of state law apply to arbitration clauses governed by the FAA.")). There is a strong presumption in favor of the validity of arbitration agreements because of the strong policy favoring arbitration. *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273 (4th Cir.1997). "Pursuant to that liberal policy, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Id.* at 273–74 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983)).

The plaintiff first cites to the provisions of the Handbook stating that the terms of the Handbook do not create a contract of employment and that the plaintiff is an at-will employee. The paragraphs of the Handbook cited by the plaintiff emphasize the at-will nature of employment with the defendant and attempt to forestall claims by employees that a contract of employment for any definite term exists (*see* doc. 28-1 at pp. 1, 41). The paragraphs are contained in the Introduction on the first page and the Employee Acknowledgment on the last page of the Employee Handbook and state as follows: "This Handbook does not in an way constitute, either expressed or implied, a contract of employment," and "I understand that the information contained in this Handbook is presented in summary form, is meant only as a general guide, and does not create any contract of employment, expressed or implied" (*id.*).

In a case in this circuit in which the plaintiff made a similar argument, the district court stated:

> Plaintiff argues that because one paragraph of the Handbook Receipt provides that the Handbook "cannot and shall not" be construed as a contract, the arbitration clause cannot be construed as a binding contract. As described above, the Court believes that the arbitration agreement language is clearly separate from the Handbook policy, and finds that it is distinct enough from language establishing the Handbook is not a contract so as to not be influenced by it.

*Sedelnikova v. The Cheesecake Factory Restaurant, Inc.*, C.A. No. AW-09-2398, 2010 WL 2367387, at *5 (D. Md. June 7, 2010). The defendant in this case does not contend that it has an employment contract with the plaintiff; rather, it contends that it has an arbitration contract with her. Accordingly, the fact that the Handbook indicates that it does not alter at-will employment relationship with the defendant does not mean that the agreement to arbitrate is somehow unenforceable. *Captain D's, LLC v. McClenathan*, No. Civ. A. 2:06-0261, 2006 WL 3409757, at *3 (S.D. W. Va. Nov. 27, 2006). *See Reese v. Commercial Credit Corp.*, 955 F.Supp. 567, 570 (D.S.C. 1997) (rejecting plaintiff's argument that he was

7

misled by paragraph on first page of Arbitration Policy that reaffirmed the at-will nature of the employment relationship as "no reasonable person could conclude that this paragraph somehow negates the mandatory nature of the Arbitration Policy").

The plaintiff further argues the Arbitration Policy lacks consideration. The Fourth Circuit Court of Appeals has held that an arbitration agreement is supported by adequate consideration when the parties mutually agree to be bound by the arbitration process and the agreement does not permit the employer to ignore the results of arbitration. *See e.g., Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) (finding that the agreement to be bound by arbitration is adequate consideration); *Johnson v. Circuit City Stores*, 148 F.3d 373, 378–79 (4th Cir. 1998) (finding arbitration agreement where employee and employer are bound by arbitration gives adequate consideration). Here, both the defendant and the plaintiff agreed that any controversy, dispute, or claim between them would be settled by binding arbitration at the request of either party, and the agreement does not permit the defendant employer to ignore the results of the arbitration.

The plaintiff also argues that the language of the Arbitration Policy and the Employee Handbook Acknowledgment only acknowledge her receipt of the Handbook and not her agreement with the policies within the Handbook. The plaintiff does not argue that she did not receive actual notice of the Arbitration Policy in the Employee Handbook, and she likewise does not appear to argue that she did not sign the Employee Acknowledgment, which states that she received and read a copy of the Handbook (*see* doc. 10-1). In *Reese v. Commercial Credit Corp.*, the Honorable Henry M. Herlong, Jr., Senior United States District Judge, found that the continued employment of an employee who received actual notice of the employer's Arbitration Policy bound the parties to the agreement. 955 F. Supp. 567, 570 (D.S.C. 1997) (citing *Small v. Springs Industries, Inc.*, 357 S.E.2d 452, 454 (S.C. 1987)).

Lastly, the plaintiff argues that the Arbitration Policy is "one-sided and unconscionable" (doc. 28 at p. 6). South Carolina courts have defined unconscionability "as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms which are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc.*, 472 S.E.2d 242, 245 (S.C. 1996). The Arbitration Policy at issue in this case provides that: 1) either party may request arbitration; 2) the employee and the defendant will select an arbitrator by mutual agreement; 3) if the parties are unable to agree on a neutral arbitrator, either party may elect to obtain a list of arbitrators, and the employee and the defendant will alternately strike names from the list, with the employee striking the first name; 4) arbitration proceedings will be held in the county and state where the employee works or worked; 5)  both parties are entitled to conduct reasonable discovery; 6)  the cost of the arbitrator and other incidental costs of arbitration that would not be incurred in a court proceeding shall be borne by the defendant; and 7) both parties understand that by using arbitration, they are giving up any right they may have to a judge or jury trial with regard to all issues concerning employment. The policy further provides that "[o]nly the President of the Company may modify [the Arbitration Policy] in a signed writing . . . "; however, "only as is necessary to make this policy enforceable under any federal, state, or local law or other applicable case law effective after this policy's initial dissemination to its workforce" (doc. 10-2). While the plaintiff complains that there is no evidence that the Arbitration Policy "was subject to any negotiation, or that Plaintiff was given any time, let alone adequate time, to review the Handbook before having to acknowledge its receipt" (doc. 28 at p. 7), a party signing an agreement is presumed to have read it. *See Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 701 (10th Cir.1989) (rejecting an argument of unconscionability based on a contention that the

arbitration agreement was not noticed or explained to plaintiffs).The Arbitration Policy here is not one-sided, nor is it oppressive to the plaintiff.

Based upon the foregoing, the undersigned finds that under the general contract principles of South Carolina law the Arbitration Policy at issue here is enforceable.

When an issue in a judicial proceeding is referable to arbitration, the FAA requires the court, upon the motion of a party, to stay the proceedings until that issue is arbitrated. 9 U.S.C. § 3. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2001). "[D]ismissal is a proper remedy," however, "when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001).  As it appears that all of the issues presented in the amended complaint are arbitrable,[1] the instant action should be dismissed.  Should the district court adopt this recommendation, the defendant's partial motion to dismiss for failure to state a claim discussed below will be rendered moot.

*Partial Motion to Dismiss for Failure to State a Claim*

A timely filed amended pleading supersedes the original pleading. *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'" (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000)); *see also* 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2011) ("A pleading that has been amended . . . supersedes the pleading it modifies . . . . Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . ."). As a result, motions directed at the superseded pleading generally are to

---

[1]The plaintiff does not argue that any of the causes of action in the amended complaint are not arbitrable (*see generally* doc. 28).  Furthermore, the Arbitration Policy provides that "[t]he claims which are to be arbitrated under this policy include, but are not limited to,  . . . claims for breach of contract (express or implied), claims for violation of public policy,  wrongful termination, . . . claims for unlawful discrimination and/or harassment (including, but not limited to, race . . . age . . .) . . . " (doc. 10-2).

10

be denied as moot. *See, e.g.*, *Hall v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, No. 3:10-cv-418-RJC-DSC, 2011 WL 4014315, at *1 (W.D.N.C. June 21, 2011) ("It is well-settled that a timely filed amended pleading supersedes the original pleading, and that motions directed at superseded pleadings are to be denied as moot.") (citations omitted); *McCoy v. City of Columbia*, C.A. No. 3:10-132-JFA-JRM, 2010 WL 3447476, at *1–2 (D.S.C. Aug. 31, 2010) (adopting the magistrate judge's report and recommendation to the extent it recommended that the motion to dismiss be found as moot because the amended complaint superseded the original complaint and rendered any attack upon it moot).

However, "if some of the defects raised in the original motion remain in the new pleading, the court simply *may* consider the motion as being addressed to the amended pleading [because to] hold otherwise would be to exalt form over substance." 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2011) (emphasis added). For example, in *Monster Daddy LLC v. Monster Cable Prods., Inc.*, the court held that because the plaintiff repeatedly asserted that the defendant's amended answer remained deficient, it would defy logic and exalt form over substance to accept the defendant's contention that the motion to dismiss its counterclaims and affirmative defenses was moot after the defendant amended the answer. C.A. No. 6:10-1170-HMH, 2010 WL 4853661, at *3 (D.S.C. Nov. 23, 2010) (quoting 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2010)).

Here, after the defendant filed its partial motion to dismiss for failure to state a claim, the plaintiff filed an amended complaint. However, the defects alleged by the defendant in the original complaint remain in the amended complaint. Furthermore, in the later-filed motion to dismiss action and compel arbitration, the defendant specifically notes that the plaintiff's amended complaint did not cure the defects identified in the partial motion to dismiss for failure to state a claim (doc. 10 at p. 3 n.1), and the plaintiff did not respond

to these arguments in her response (*see* doc. 28). Based upon the foregoing, the undersigned will consider the arguments presented in the partial motion to dismiss for failure to state a claim as directed to the plaintiff's amended complaint.

The plaintiff is not entitled to relief on her age discrimination claims under Title VII and Section 1981 because neither Title VII nor Section 1981 address discrimination on the basis of age. Title VII provides: "It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's *race, color, religion*, *sex*, or *national origin*...." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). In addition, Section 1981 provides, in pertinent part, "All persons... shall have the same right... to make and enforce contracts... as is enjoyed by *white* citizens...." 42 U.S.C. § 1981 (a) (emphasis added). *See also Dixon v. City of Winston Salem,* No. 94-1708, 1995 WL 1536, at *1 (4th Cir. Jan. 3, 1995) ("Protection against *racial* discrimination in the making and enforcement of contracts is provided by 42 U.S.C. § 1981.") (emphasis added).

The plaintiff cannot bring cognizable age discrimination claims under Title VII and Section 1981 based upon the plain language of those statutes. Accordingly, her claims of age discrimination under Title VII and Section 1981 in her third and fourth[2] causes of action in the amended complaint should be dismissed because they fail to state claims upon which relief can be granted. *See Crites v. Kaiser Aluminum and Chemical Corp.*, No. 91-1231, 1992 WL 64873, at *1 (4th Cir. April 3, 1992) (§ 1981 does not protect against discrimination based on sex). Furthermore, as argued by the defendant (doc. 10 at p. 4), the ADEA does not protect against racial discrimination and is only applicable to age discrimination. *See Garrison v. State of Md., Great Oaks Center*, 850 F.Supp. 366, 368 (D.

---

[2] The plaintiff's amended complaint labels both of these claims as the "third cause of action."

Md. 1994) (ADEA protects against age discrimination). Accordingly, the plaintiff's racial discrimination claim under the ADEA in the fifth cause of action of the amended complaint should also be dismissed.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that defendant's motion to dismiss action and compel arbitration (doc. 10) be granted. Should the district court adopt this recommendation, the defendant's partial motion to dismiss for failure to state a claim (doc. 6) will be rendered moot. Should the district court reject this recommendation, this court recommends that the defendant's partial motion to dismiss for failure to state a claim (doc. 6) be granted as set forth above.

IT IS SO RECOMMENDED.

November 19, 2013                                                                 s/ Kevin F. McDonald
Greenville, South Carolina                                                 United States Magistrate Judge